## Lee, Appellant, *v.* Williams.

*Mechanics' liens—Covenants against liens—Contract—Act of June 26, 1895, P. L. 369.*

Where work has been begun under a building contract and proceeded with to a considerable extent, and the contract contains no stipulation against liens, the owner and the contractor cannot cancel the contract, and enter into a new one containing a stipulation against liens, so as to defeat the rights of a material man to file a lien for materials ordered on the day that the new contract was executed and delivered to the operation two

days thereafter. In such a case the material man had a right to rely upon the status existing at the time that authority was given to the contractor to proceed with the work.

Argued Jan. 17, 1903. Appeal, No. 70, Jan. T., 1903, by plaintiff, from judgment of C. P. Luzerne Co., March T., 1898, No. 231, on verdict for defendants in case of George F. Lee and Frank J. Scouton, trading as Lee & Scouton, v. David Williams et al. Before BEAVER, SMITH, W. W. PORTER W. D. PORTER and MORRISON, JJ. Reversed.

Scire facias sur mechanic's lien. Before LYNCH, P. J.

The court charged as follows:

The defendants, Mr. Williams and Mrs. Owens, in 1897, were the owners of a lot of land on Green street in the borough of Nanticoke, Luzerne county. They deemed it advisable to erect thereon two houses, called a block; and with this in view, on August 11, of that year, entered into a contract with Mr. Zimmerman to erect this building. Mr. Zimmerman, in pursuance of this contract, proceeded so far as to have the cellar excavated and the wall erected, and perhaps, a sill laid upon the wall, by September 8. [Then for the purpose of borrowing money, upon the part of Owens and Williams, it was deemed advisable by them to cancel this contract and enter in a new one.] [17] It is claimed by the defendants all the material furnished up to that time was by Mr. Barrall and others, and not by Messrs. Lee and Scouton. [On September 9, a new contract was entered in writing between Zimmerman and the defendants. The first contract had no provision or stipulation against the filing of liens. The one of September 9 had this provision against the filing of liens: " 7. No lien shall be filed against the building by the contractor or subcontractor nor by any of the material men or workmen." Owens and Williams and Zimmerman had a right to cancel the old contract and enter into a new one.] [18] If there is any evidence in the case—and there is not—that they entered into a second contract for the purpose of defrauding Lee & Scouton, the contract would not be binding upon Lee & Scouton. [Even though they had progressed in the erection of the building, they would, as between themselves, have the right to cancel the old and

enter into a new agreement. It was their own affair. And if, up to that time, the plaintiffs had not furnished material upon the credit of the building, the second contract with the stipulation against liens would bind the plaintiffs.] [19]

It is not questioned that Lee & Scouton furnished the material for this building. Their prices are not disputed; the quantity furnished is not doubted; it is simply a question of when they commenced to furnish it. [If they began to furnish material after the contract of September 9, 1897, was executed, the stipulation binds them, and they are not entitled to recover. Because the law provides where a stipulation of this kind is entered into and filed in the prothonotary's office—as this was, the next day—a material man or subcontractor who furnishes material afterwards, has no right to file a lien against the building,] [20] although he has a right to sue for and recover the value of his material from the person who ordered it.

On September 9, the day on which the second contract was entered into between the defendant and Mr. Zimmerman, the books of original entry of Lee & Scouton, as testified to by Mr. Palmear, who, although not the regular bookkeeper, said he did bookkeeping at that time, show when it is claimed the lumber was ordered and delivered. He testified to the usual course of business and believed this lumber was delivered then, although he was not the drayman or teamster and had no charge of that branch of the business; he simply made the entries in the books for the plaintiffs. Mr. Cease testifies negotiations on September 9, were entered into for lumber, and the loading slip made by him is on September 11.

I instruct you there is no evidence that the contract of September 9 was fraudulent and collusive, for the purpose of cheating any one. When it is claimed an agreement between parties is fraudulent and collusive, there must be evidence to substantiate the averment. It will not do to simply say it is so. On the other side, the testimony of Mr. Williams, one of the defendants, is that plaintiffs first furnished material on or about September 18; of Mr. Zimmerman, he first gave an order to Lee & Scouton on September 15, but states they continued to work right along from the 8th. They had a right to continue to work. [The parties had a right so long as they did not defraud or enter into a scheme to defraud a third person,

564, (1903).]            Charge of Court—Arguments.

to make such contract concerning the erection of this building, as they saw fit.] [2] Mr. Owens stated the first load of lumber by Lee & Scouton was about September 18, and Mr. Fargo says, as near as he can tell, it was on the 15th to the 18th of September; he did not pay particular attention and was not there. He said he was there as late as the 10th to the 15th.

And John W. Zimmerman said he worked on the old building with the old material, on the 8th, 9th and 10th and on the 11th was notified to go on, all was right under the new contract.

[The real contention is whether Lee & Scouton began furnishing material for this building before September 9, the day on which the second contract containing the stipulation against liens was entered into. If they did, they ought to recover; if not, they should not recover, the verdicts should be in favor of the defendants. Decide this upon the weight of the credible evidence in the case and render verdicts accordingly.] [22]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* among others were (17–22) portions of charge as above, quoting them.

*James R. Scouton*, for appellants.—Mechanics' liens attach from the time the first labor is done on the ground for the foundation of the building, and this is not affected by a temporary suspension of the work or a change in the ownership or plan of the building, so long as the original design of the structure is retained: Hein v. Hopkins, 13 S. & R. 269; Holden v. Winslow, 18 Pa. 160; American Fire Insurance Co. v. Pringle, 2 S. & R. 138; Hess v. Coleman, 2 W. N. C. 224.

The driving of stakes in pursuance of the erection of the building and upon which the building is erected, is a commencement: Pennock v. Hoover, 5 Rawle, 291, 307; Moroney's Appeal, 24 Pa. 372; Denkel's Estate, 1 Pearson, 213; Lombaert v. Morris, 2 Del. Co. Rep. 457; Rush v. Able, 90 Pa. 153; Prutzman v. Bushong, 83 Pa. 526; Williamson v. Tunis, 19 Pa. Superior Ct. 207.

*Thomas D. Shea*, with him *Charles A. Shea*, for appellee, cited: Phelps v. Burns, 16 Pa. Superior Ct. 391; Snyder v. Zane, 15 Pa. Superior Ct. 403.

OPINION BY BEAVER, J., April 20, 1903:

On August 11, 1897, the defendant owners entered into a written agreement with the defendant contractor, providing for the erection of a double dwelling house upon a lot owned by former.   The agreement provided that the contractor "shall and will, within the space of three months from the date hereof, in a good and workmanlike manner and according to the best of his art and skill, and according to the plans and specifications furnished by an architect, which are to be taken and considered a part of this agreement, well and substantially erect, build and set up and finish the house mentioned in above mentioned plans and specifications."

In pursuance of the agreement, the contractor, as authorized to do, entered upon the erection and construction of the said house.   The cellar was excavated and the foundation walls erected; some of the lumber furnished by parties other then the plaintiffs was upon the ground and a part of it perhaps in place.   The written agreement, under which this work was done, was marked " Cancelled September 9, 1897 ; all liens herein contained revoked by parties; new contract made this date."

On the same day (September 9), a new agreement was entered into differing in many respects from the original one made on August 11, and containing especially this clause: "Seventh.   No lien shall be filed against the building by the contractor or subcontractors nor by any of the material men or workmen."

On the same day (September 9), according to the plaintiffs' testimony, the contractor ordered from the plaintiffs certain material for the said buliding, part of which was delivered September 11, and the remainder later.

An apportioned lien was filed February 25, 1898, describing the double building as separate erections and claiming $395.21 from each.   The character, quality and amount of the materials are set forth, alleging that " all of which materials were so furnished during the continuous erection and construction of said new buildings which were finished within the six months last past and was commenced on the 18th day of August A. D. 1897, and completed continuously between that date and the 22d day of December, 1897."

It was claimed by the defendant that inasmuch as the agreement August 11, 1897, was canceled September 9, 1897, and a new agreement entered into upon that date, containing a stipulation against liens, which was filed in the prothonotary's office on the following day (September 10), the plaintiffs, inasmuch as no lumber was furnished, even by their own showing, until September 11, were bound by the stipulation contained in the agreement of September 9, and were not entitled to file a lien for the materials furnished by them in and toward the erection of the said buildings.

The act of assembly of June 26, 1895, P. L. 369, provides: " That no contract for the erection of the whole or any part of any building hereafter made and no stipulation separately made as part of any such contract, whereby it is sought to deprive or hinder a contractor, subcontractor, material man or other person from filing or maintaining a lien, commonly called a mechanic's lien, for work done or material furnished to such building, or to any part thereof, shall operate to defeat the right of any subcontractor, material man or other person to file and maintain such a lien, unless such contractor or the stipulation shall specifically covenant against such lien by subcontractor or other person and unless said stipulation shall be put in writing and signed by the parties thereto prior to the time authority is given to the principal contractor to proceed with said work, and unless said contract or said stipulation shall be filed with the prothonotary of the county where the land lies for record within ten days after its execution."

The plaintiffs contend that the stipulation against liens in the contract of September 9, 1897, was wholly void as to them, under the provisions of the act of assembly, because it was not put in writing and signed by the parties thereto prior to the time authority was given to the principal contractor to proceed with the work of building the houses provided for in the contract.

The work having already proceeded to such an extent that it gave notice to all the world that the buildings were in process of erection and no stipulation against liens then appearing of record, they, the plaintiffs, were justified in furnishing the materials upon the credit and faith of the building, relying upon their right to file a mechanic's lien therefor.

The trial judge in the court below tried the case upon the

theory that the cancelation of the original agreement having been made in good faith, for the purpose of making a new agreement, under which it would be possible to borrow money for the completion of the buildings, and a stipulation for liens having been made part of the new agreement and it having been recorded within the ten days required by the act of assembly, all parties furnishing material upon the faith of the building subsequently to that date were bound by the stipulation therein contained, unless it were shown affirmatively that the latter agreement was fraudulent and collusive and entered into for the purpose of cheating some one, and instructed the jury that there was no evidence that the said contract was made for that purpose.

This view of the case was entirely erroneous. It was not a question of fraud or collusion. The motive which influenced the parties to the contract did not properly enter into the consideration of the case. It was a question of the legal right of the defendant owners and the defendant contractor to enter into a contract after the building had been commenced and partially completed to make a valid stipulation against liens. The contract of August 11 undoubtedly authorized and indeed required the plaintiff to proceed with the work of the erection of these buildings immediately. He did proceed to such an extent, as already stated, that the foundation walls were completed and perhaps some of the sills and joists laid. This was notice to all the world that the houses were being erected and an examination of the records at that time showing that no stipulation against liens had been made, anyone contemplating the furnishing of materials for the said houses had the right to rely upon the status as then existing, and indeed it may be seriously questioned whether, even if the plaintiffs had actual notice of the cancellation of the first agreement and of the making and recording of the second agreement, they would have been bound thereby. The provisions of the act of 1895, supra, are very specific. No contract shall operate to defeat the right of any subcontractor, material man or other person to file and maintain such a lien, unless the stipulation against liens shall be put in writing and signed by the parties thereto prior to the time authority is given to the principal contractor to proceed with the work. It is plain, therefore, that the rights of the plaintiff

were entirely misconceived by the trial judge in the court below. Instead of saying to the jury that there must be fraud, collusion and intention to cheat on the part of the owners and contractors to invalidate the stipulation against liens, he should have said that the stipulation was void, because contrary to law. The case under consideration is a good illustration of the wisdom of the provisions of the act of assembly herein referred to. It is unnecessary to enlarge upon the possibilities of fraud which may be involved in any other view of the law. If the lien in this case was regular, the material furnished the subject of lien and the amount correct, the plaintiffs were entitled to a verdict and judgment.

We see nothing erroneous in allowing the defendant's counsel to cross-examine the witness called by plaintiff as on cross-examination.

It is not necessary to follow the appellant through all of the thirty-two assignments of error with which his paper-book is encumbered. What we have said goes to the root of the case and sufficiently indicates the misconception of the court caused by leaving out of view the plain requirements of the act of assembly which led to all the subsequent mistakes. Judgment reversed and a new venire awarded.

