## Lee *v.* Williams, Appellant (No. 1).

*Mechanics' liens—Building contract—Stipulation against liens—Subcontractor—Notice.*

After a building has been commenced under a contract between the owners and the contractor, containing no stipulation against liens, a material man from whom no material had been ordered, and who had furnished none prior to the cancelation of the contract by the parties thereto, is bound by the provisions of a second contract relating to the same building, containing a stipulation against liens of which he has actual notice, and which was filed in the prothonotary's office in accordance with the terms of the Act of June 26, 1895, P. L. 369, before any materials were ordered from or furnished by him.

Argued Jan. 15, 1904. Appeal, No. 62, Jan. T., 1904, by defendants from judgment of C. P. Luzerne Co., March T., 1898, No. 231, on verdict for plaintiff in case of George F. Lee and Frank J. Scouton trading as Lee & Scouton v. David Williams, et al., owners or reputed owners, and J. W. Zimmerman, contractors or builders. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Scire facias sur mechanics' liens. Before FERRIS, J.

The facts appear by the opinion of the Superior Court.

Verdict and judgment for plaintiff for $519.45. Defendant appealed.

*Errors assigned* were rulings on evidence quoted and referred to in the opinion of the Superior Court.

*E. A. Lynch,* and *T. D. Shea,* with them *C. Shea,* for appellants.—The right of parties by mutual consent to modify or revoke their contracts and substitute different ones in their stead before the interest of those who are not parties to the same have attached, and with no fraudulent intent, will be conceded : Fulton v. Lancaster Co., 162 Pa. 294 ; Camden Wood Turning Co. v. Malcolm, 190 Pa. 62.

Previous to the act of 1895 a subcontractor was bound by the provisions of a supplemental contract containing a clause

against liens where the original one did not so provide, if he had notice of the second contract before his employment began : Cook v. Murphy, 150 Pa. 41; Smith v. Levick, 153 Pa. 522; Lumber Co. v. Gill, 187 Pa. 24.

To hold that the provisions of the act of June 26, 1895, justifies the rejection of the evidence offered in this case in its present aspect is, it seems to us, in effect to impute to the act the right to deprive the owner from contracting against incumbrances on his property arising from indebtedness contracted by others.

*James R. Scouton,* for appellee.

OPINION BY BEAVER, J., November 17, 1904 :

When this case was here last year, 22 Pa. Superior Ct. 564, the judgment was reversed upon the ground that :

" The trial judge in the court below tried the case upon the theory that the cancelation of the original agreement having been made in good faith, for the purpose of making a new agreement, under which it would be possible to borrow money for the completion of the buildings, and a stipulation for (against) liens having been made part of the new agreement, and it having been recorded within the ten days required by the act of assembly, all parties furnishing material upon the faith of the building subsequently to that date were bound by the stipulation therein contained, unless it were shown affirmatively that the latter agreement was fraudulent and collusive and entered into for the purpose of cheating some one, and instructed the jury that there was no evidence that the said contract was made for that purpose." In reference to that we said :

" This view of the case was entirely erroneous. It was not a question of fraud or collusion. The motive which influenced the parties to the contract did not properly enter into the consideration of the case. It was a question of the legal right of the defendant owners and the defendant contractor to enter into a contract, after the building had been commenced and partially completed, to make a valid stipulation against liens," etc.

This was the main ground upon which the case was reversed. It is true that, in the consideration of the case, we assumed

that the date of the contract made by the contractor with the plaintiffs who delivered lumber used in and about the construction of the building was September 9, 1897, the day upon which the new agreement was entered into, and it was in view of such assumption that we said : " Indeed it may be seriously questioned, whether, even if the plaintiffs had actual notice of the cancelation of the first agreement and of the making and recording of the second agreement, they would have been bound thereby." The assumption that the date upon which the lumber was ordered was September 9, was based upon the testimony of a disinterested witness who stated that the order was entered in a book belonging to the plaintiffs together with other orders of the same date. There was no allegation of fraud in this entry and the only testimony as to any mistake in regard to it was that of Mr. Zimmerman, the contractor, who, in his examination on behalf of the defendants, testified as follows : " Q. When did Lee & Scouton first bring any lumber to that building ? A. I think it was about the middle of September, if I remember right, when they fetched the first. Q. About what date ? A. Between the 15th and 18th, I should judge, but I cannot swear to those dates. Q. Have you any means of ascertaining that ? A. I have not. Q. Have you a book showing that ? A. I have not." Subsequently, on being asked to refresh his recollection from the notes of testimony taken before the arbitrators, he said : " Q. After having refreshed your recollection, tell us when it was you first gave the order to Lee & Scouton for lumber. A. September 15, 1897." On being recalled, subsequently, at his own request, to correct his testimony, based upon entries made in his time book, he testified : " Q. This time book shows that September 8, 1897, you worked on this building nine hours, framing ? A. Yes, sir. Q. It shows on September 9 you worked six hours framing; it shows on September 10 you worked nine hours, framing, and on September 11 you worked ten hours, framing, and September 12 was Sunday and, on the 13th, you worked nine hours, framing, and on the 14th you worked ten hours framing and raising, and the 15th, ten hours framing and raising—and so on down through the whole month ? A. Yes, sir. Q. That is correct is it not ? A. That is right; yes, sir, I done that." It seemed to us, therefore, that

the testimony tending to show that the order to Lee & Scouton was ·at a date different from that contained in their order book was uncertain and by no means either clear or satisfactory and not in the same class as that which tended to establish the date of the order as fixed by the plaintiffs, and that for the purposes of the case as it then stood that fact might be assumed.

The question raised by the present record was not before us in the former case and was not considered. The principal question here is raised by the first assignment of error which relates to the rejection of defendant's offer of testimony, as follows:

" Defendants' counsel : We propose to prove by the witness on the stand, that he is the John W. Zimmerman, agent, who executed the first contract dated August 11, 1897, for the construction and erection of the buildings in question. We further propose to prove that in pursuance of said contract he proceeded with the work up to about the 7th or 8th of September, 1897, when the work was stopped and a new contract made. That prior to September 7, 1897, the witness had a conversation with George F. Lee, one of the plaintiffs in this action, prior to the order upon which this lien is based. That in the course of the said conversation, George F. Lee requested Zimmerman, the witness, to purchase the supplies and material for said building from his firm, to wit : Lee and Scouton. That George F. Lee, further, in the course of said conversation, agreed to supply the witness with sufficient funds to pay off all liabilities incurred by him for labor and material up to that date in and about the construction of the Owens and Williams building, so that the firm of Lee and Scouton might obtain the orders for furnishing the balance of the material necessary for the completing of the buildings, said money to be used in obtaining releases from those who had already furnished material or labor, so that a new contract could be made containing a stipulation against liens. That at that time, to wit : during this conversation, which occurred prior to the time the goods were ordered, upon which this lien was based, the witness notified George F. Lee that he was about to or had already entered into a contract with the defendants, which contract contained a stipulation against the filing of mechanics' liens, and that said contract had been or was about to be filed of

record in the prothonotary's office of Luzerne county, as required by law. That the witness further gave George F. Lee, one of the plaintiffs in this action, actual notice that he would not order or receive any lumber from George F. Lee, or the plaintiffs, until said contract had been filed, and that the purpose of not giving said order was to prevent the filing of mechanics' liens against the buildings in question by any material men furnishing goods or merchandise to the building thereafter.

"This to be followed further by the testimony of this witness that no goods or material were ordered or supplied to the buildings in question by the firm of Lee and Scouton, the plaintiffs in this case, until said contract and stipulation had been filed as above stated, and until a week or more had elapsed after the said filing, and about two weeks after the plaintiffs had received actual notice, as above stated, from the witness that such a contract had been or was about to be made and had been or was about to be filed."

After objection, the defendant added to his offer as follows:

"Defendants' counsel: The defendant further proposes to prove by the witness on the stand that the contract dated September 9, 1897, between John W. Zimmerman, agent, and James E. Zimmerman, principal, and the defendants in this case, was reduced to writing, signed by the parties thereto, filed in the prothonotary's office of the county of Luzerne, in which the land in question lies, within ten days after its execution, and before Zimmerman, the principal contractor, was authorized to proceed with said work under said contract, to wit: the contract of September 9, 1897."

The objections were renewed and sustained and we are, therefore, to consider whether or not the testimony offered should have been admitted.

The question for consideration practically comes to this: Is a material man a subcontractor after a building has been commenced, under a contract between the owners and the contractor containing no stipulation against liens, from whom no material has been ordered and who has furnished none, which contract has been canceled by the parties thereto, bound by the provisions of a second contract containing a stipulation against liens, of which he has actual notice and which is filed in the

prothonotary's office in accordance with the terms of the Act of June 26, 1895, P. L. 369, before any materials have been ordered from or furnished by him ?

If the defendants' testimony rises to the height of their offer, this question would be fairly raised and, as we are bound to accept the offer as verity, we must deal with it, so far as the case now before us is concerned, as if the testimony would be equivalent to the offer. We are unable to see, under such circumstances, why an issue of fact would not be raised which must go to a jury. Whatever may be our opinion of this offer, in view of the manner in which it is made and of the testimony in the former case, we feel bound to say that, if the facts therein offered to be proved are clearly shown, it will be for a jury to pass upon the credibility of the witnesses and the other facts in the case upon which their testimony is based, under careful instructions from the court as to the relative value of the evidence adduced by the plaintiffs and defendants respectively.

The second assignment of error relates to a similar offer to be proved by another witness.

It follows that if the defendants make good their offer, the case is not one for binding instructions but must go to the jury, as already intimated, under proper instructions.                    -

Judgment reversed and a new venire awarded.